**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

In consideration for opening or maintaining any demand deposit account, time deposit account, custody and safekeeping, or any other account(s) or deposit(s) (hereinafter jointly and severally referred to as the "**Account(s)**") with BANCREDITO INTERNATIONAL BANK CORPORATION ("BIBC") and for receiving correspondent services, the correspondent bank institution opening or maintaining such Account(s) (the "BANK") covenants with BIBC as follows:

1.      **Acceptance of Deposits.**

     A.      **Collection and Deposit**.  BIBC shall not accept any funds, securities or items for deposit or collection from BANK unless BANK and BIBC have entered a written Institutional Services Agreement; a Deposit Account Agreement; and such deposit or collection has been made pursuant to the terms of such agreements.  In addition, the effectiveness of this Agreement is subject to a minimum reciprocity deposit, the amount of which is to be established by BIBC and which deposit the BANK must maintain always while this Correspondent Bank Agreement (this "Agreement") is in effect, in a demand deposit account, time deposit account, or custody and safekeeping account, at BIBC.

     B.      **Minimum Reciprocity Deposit and Minimum Account Balance**.  BIBC will require a Minimum Demand Deposit Account Balance ("**DDA Balance**") as established in Schedule A. The BANK shall also be required to maintain at all times while this Agreement is in effect a Minimum Reciprocity Deposit in a demand deposit account, time deposit account, or custody and safekeeping account at market value, with BIBC, or any combination thereof, as a condition to maintain this Agreement in the amount established in Schedule A (the "**Minimum Reciprocity Deposit**"). The Minimum Reciprocity Deposit will not be subject to early withdrawal for a period of eighteen (18) months and shall be subject to subsequent automatic extensions of eighteen (18) months each.  Upon such extension, then, the Minimum Reciprocity Deposit will be subject to early withdrawal only upon the payment of the penalties established in Schedule A. If the BANK requires to withdraw funds below the Minimum DDA Balance, BIBC may: (i) charge additional fees as established in Schedule B - Schedule of Fees and Charges; (ii) terminate this Agreement; and/or (iii) terminate the DDA (as per Section 24).  In addition to the Minimum Reciprocity Deposit and the Minimum DDA Balance, BIBC will charge monthly fees and charges according to Schedule B – Schedule of Fees and Charges.

2.      **Authorized Signatures**.  Prior to the opening of any Account(s), BANK shall deliver to BIBC a duly completed designation and authorization form provided by BIBC (the "Authorization Form") bearing the names and original sample signatures of those officers and employees of the BANK who shall have signature authority over the Account(s).  Each of the persons whose signature appears in the Authorization Form shall be authorized to sign singly on the Account(s), unless specifically indicated otherwise in the Authorization Form.  Except as otherwise provided in this Agreement, BIBC is authorized, without limitation, to recognize the signatures of any person(s) whose signature appear(s) in BANK's Authorization Form (the "**Authorized Signatories**" and/or "**Authorized Persons**") in connection with any payment, or

**EXHIBIT A**

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

withdrawal of funds or the transaction of any other business with respect to the Account(s), including without limitation, any changes in the title of the Account(s).

BIBC is further authorized to honor as genuine the signature or purported facsimile signature of any Authorized Signatories, and BANK shall indemnify and hold BIBC harmless against any and all loss, liability, cost, damage or expense, including reasonable attorney's fees (and attorney's fees on appeal), suffered or incurred by BIBC resulting from, or arising out of the payment of, any items or instruments bearing the signature or facsimile signature of any Authorized Signatory. BIBC is authorized, at its sole discretion, to honor any item drawn or endorsed by any Authorized Signatory, even though the signature thereon does not correspond exactly with the Authorized Signatory's specimen signature; however, BIBC is not obligated to honor any item drawn or endorsed by an Authorized Signatory unless his/her signature corresponds exactly with the Authorized Signatory's specimen signature.

Revisions, deletions or additions to the signatures appearing in BANK's Authorization Form shall be effectuated through the delivery by BANK to BIBC of formal written notice thereof duly executed by an Authorized Signatory. BANK agrees that for a period of not less than five (5) business days after BIBC's receipt of such written notification, BIBC shall continue to be authorized to honor any items or instruments bearing the signature of any previously named Authorized Signatory on the Account. In any case, BIBC shall not be obligated to accept changes in Authorized Signatories to an Account until BIBC shall have first received appropriate original sample signatures for all new Authorized Signatories to the Account. For purposes hereof, the term "**business day**" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in San Juan, Puerto Rico are authorized or required by law to remain closed.

3.      **Identity of Authorized Signatories and Authorized Persons**.  BANK shall promptly provide BIBC with such information/documentation regarding the identity of any Authorized Signatories having signature authority in an Account as BIBC may require, from time to time, at its sole discretion.      Similarly,  BANK shall also promptly provide to BIBC such information/documentation as BIBC may require, from time to time, at its sole discretion, regarding the beneficial owners of BANK or any person having authority to direct transactions through an Account, including information/documentation regarding the sources and beneficial ownership of such funds or other assets of such person in an Account.

4.      **Endorsements**.  BIBC may, at its sole discretion, accept any item endorsed for deposit to an Account and such endorsements may be made manually, with type, by stamp, or otherwise; and any such endorsement will be treated as genuine in all respects and as warranting and guaranteeing all prior endorsements thereon.  Payment of an item may, at BIBC's sole discretion, be refused if it is endorsed in pencil, if improperly prepared, if illegible or if the item contains a double endorsement.  Any item payable to the BANK may be deposited in and credited to the Account without being endorsed by the payee(s).

BIBC shall have no liability to BANK in connection with the late return of any item deposited to an Account when the lateness is caused by markings on the items made by or on behalf of BANK or a prior endorser in the space reserved on the item for the depository bank endorsement.  BANK

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

---

agrees to indemnify BIBC and to hold BIBC harmless from and against any and all claims, damages, losses or liabilities of any kind, including attorneys' fees, for delays or errors in the return of any items drawn on the Account where delay or error is caused by markings placed on an item by or on behalf of BANK or prior endorser that have obscured the properly placed endorsement of the depository bank.

5.    **Payment of Items**.  BIBC may, at its sole discretion, refuse payment of and return as unpaid any or all items drawn on an Account and presented to BIBC for payment on any banking day, if at the opening of such banking day there is not a sufficient balance of collected funds in the Account to pay the total amount of such item(s).  BIBC shall not be responsible for the payment of items which are presented the same banking day on which deposits are made to an Account, unless there is already a sufficient balance of collected funds in the Account to pay the total amount of such item(s).  Items will be paid or payments may be refused on items, at BIBC's sole discretion, if the item is written in pencil, incomplete, stale or postdated, presented beyond the date for payment, not properly endorsed, illegible or not payable or negotiable for any other reason.

6.    **Time Deposit Accounts/Interest Rates**.  Whenever BANK places funds in a time deposit, BANK agrees to leave the funds on deposit, with BIBC until the maturity date of the time deposit. If BANK makes a withdrawal from or redeems a time deposit (other than the Minimum Reciprocity Deposit, which shall be subject to Section 1(B) of this Agreement), before the maturity date, BANK may be subject to a penalty for early withdrawal as stated in Schedule B – Schedule of Fees and Charges.  BIBC reserves the right, at its sole discretion, to change the interest rate(s) paid by BIBC on any interest-bearing deposit or account offered by BIBC, other than time deposits, which are subject to change at maturity, and reserves the right to deny early withdrawal from a time deposit.

7.    **Overdrafts**.  If the balance of readily available funds in an Account is insufficient to pay an item drawn by BANK thereon, BIBC will not be required to pay such item, but BANK agrees to pay BIBC, and BIBC may deduct from such Account, a service charge for the processing and return of the item.  If BIBC, at its sole discretion, agrees to pay an item which exceeds the balance of readily available funds in an Account, thereby creating an overdraft in such Account, BANK agrees to promptly pay the overdraft balance and an overdraft charge.  In the event of an overdraft balance in an Account, BIBC shall also have the right, at its sole discretion, to charge BANK interest on the amount of the overdraft at such interest rate as BIBC deems appropriate (but not to exceed the highest interest rate allowed by applicable law).  In order to provide funds with which to pay an item presented for payment on an Account, or to cover an overdraft in an Account (and any interest and/or service charges on such overdraft), BIBC may, in its sole discretion, transfer funds from one Account of BANK to another Account of BANK, whether a demand deposit or time deposit account; however, in the absence of a specific written agreement to the contrary with BANK, BIBC shall be under no obligation to do so.

8.    **Statements of Account**.  BIBC is authorized and directed to mail for each Account (except Time Deposits), to BANK's last known address, at the close of each accounting period for the particular Account (as determined by BIBC from time to time), a statement pertaining to the Account for the preceding accounting period, together with the items and other evidence of credits

---

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

or charges against the Account for that period. If any statement is returned to BIBC because of an incorrect address, BIBC may stop sending statements to BANK until the address is rectified in writing by the BANK.

BANK is obligated to carefully review and examine each statement and all accompanying items and documentation immediately upon receipt and to promptly report to BIBC any problem(s), irregularities or error(s) in the statement or in the Account, and particularly any problem(s), irregularities or error(s) relating to any payment(s), transfer(s), withdrawal(s), debit(s) or credit(s) in the Account, indicated in the statement or evidenced by any of the accompanying items or documentation. Since BANK is in the best position to discover irregularities or errors of account, unauthorized signatures or endorsements and alterations of items or instruments, BANK shall be fully precluded from asserting any dispute or difference as to a statement and from asserting any claim, demand or cause of action against BIBC for any payment, withdrawal or transfer indicated in a statement or evidenced by any accompanying items or documentation, unless BIBC receives written notice from BANK of any alleged problem(s), irregularities or error(s) regarding the statement, items or documentation, within thirty (30) calendar days after the statement, items or documentation shall have been mailed or made available to BANK, whichever is earlier ("**Preclusion Period**"). BANK shall not be relieved of the duty to examine a statement, item or documentation to report any dispute or difference of account, nor of the stated consequences therefore, by reason of the fact that any statement, item or documentation was not sent or made available, unless BANK shall notify BIBC in writing of BANK's non-receipt of the same within thirty (30) calendar days of the date same is customarily sent or made available. BIBC shall not be liable for the payment of any item that has been forged or altered (as by unauthorized use of facsimile machine, photocopy machine or otherwise) such that an unauthorized signature, endorsement and/or alteration could not be reasonably detected by a person.

BIBC may also offer its correspondent bank customers online services through the BIBC's Website (the "**Online Banking Platform**"), which allows a correspondent bank to review periodic statements, balances and transaction history for an Account electronically online, as well as other services that may be available. If such service is subscribed to by BANK, by executing the appropriate form provided by BIBC, BANK agrees that the Preclusion Period shall commence to run from the date the statement becomes available to BANK on the Online Banking Platform.

9.  **Stop Payment**. BANK may request the stop payment of an item drawn on an Account if the item has not already been paid. No stop payment request, nor the renewal or revocation thereof, shall be valid or effective unless it is: (a) received by BIBC via the Online Banking Platform, if available, or if BANK does not subscribe to the Online Banking Platform, is received by BIBC in writing and dully signed by the authorized signatures of the BANK or SWIFT message; (b) prepared in the form specified by BIBC and containing all information required by BIBC; (c) received by BIBC on a business day during regular banking hours; and (d) received by BIBC with sufficient notice to provide it with a reasonable opportunity to act on the stop payment order. Requests for stop payment are effective for a maximum period of six (6) months, but a renewal may be requested in writing prior to the expiration of the six (6) month period. BIBC makes no representation and/or warranty regarding the enforceability or legality of any stop payment order placed by BANK on any item drawn by BANK on an Account.

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

10.    **Compliance with Applicable Laws.** (BANK shall comply with all laws and regulations of the United States applicable to its business. In addition, BANK agrees to comply with all United States laws applicable to transactions and activities passing through or involving any Account(s), including, but not limited to, Bank Secrecy Act, 31 U.S.C. §311-532, and its implementing regulations, 31 C.F.R. Part 103 (jointly, the "**BSA**"); the USA Patriot Act (Public Law 107-56) and its implementing regulations (jointly, the "**USA Patriot Act**"); the Trading With the Enemy Act, 50 U.S.C. App. §1-44, the International Emergency Economic Powers Act, 50 U.S.C. §1761-06 and the implementing regulations promulgated by the Office of Foreign Asset Controls (OFAC), as well as all United States and Commonwealth of Puerto Rico anti-money laundering laws. BANK shall additionally comply with any similar laws or regulations that may be imposed on BANK by its country of domicile or place of operations.  BANK represents and warrants to BIBC that its business, and the transactions and activities passing through the Account shall comply with all such laws or regulations.

The BANK agrees to comply with, and assist BIBC in its compliance with, all laws and regulations applicable to the transactions and activities passing through the Account(s) opened and maintained by the BANK with BIBC, including but not limited to, the Bank Secrecy Act (31 USC § 311-532) and its implementing regulations (31 CFR Part 103). If BANK discovers or becomes aware of any violations of laws or regulations applicable to the transactions and activities passing through the Account(s) BANK shall promptly notify BIBC thereof in writing.  In the event that BIBC discovers or receives information indicating that the source of funds in any of the Accounts or that any transaction conducted through BIBC or any of the Accounts may be unlawful, BIBC may, in its sole discretion, freeze the Accounts until the matter is clarified to BIBC's total satisfaction and take any other action permitted by applicable law.

11.    **Physical Presence Certification**. BANK certifies and warrants to BIBC that BANK is **not** a shell bank without a physical presence, as that term is defined in the USA Patriot Act.  To that end, BANK warrants and certifies to BIBC that BANK has a physical presence, as follows:

      A.    BANK maintains a place of business;

      B.    located at a fixed address (other than solely an electronic address or a post-office box) in a country which BANK is authorized to conduct banking activities;

      C.    at which location BANK employs one or more individuals on a full-time basis and maintains operating records related to its banking activities; and

      D.    BANK is subject to inspection by the banking authority that licensed BANK to conduct banking activities.

      Alternatively, if BANK is a shell bank without a physical presence, as that term is defined in the USA Patriot Act, BANK warrants and certifies to BIBC that BANK falls under the category of a regulated affiliate as defined in the USA Patriot Act.  To that end, BANK warrants and certifies to BIBC as follows:

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

---

A.      BANK is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country; and

B.      BANK is subject to supervision by the same banking authority in the country regulating such affiliate.

BANK shall promptly provide BIBC with written certification(s) on the physical presence (or regulated affiliate status) of BANK as BIBC may require at its sole discretion, from time to time.  BANK shall provide BIBC such written confirmation(s) within such time frames as BIBC may require and in form and substance acceptable to BIBC.

12.     **Prohibition Against Nested Banking**.  BANK shall not permit any transactions and/or activities of another financial institution from passing through any of the Accounts. BANK shall provide to BIBC with such assurances and/or confirmation regarding BANK's compliance with the foregoing prohibition as BIBC may require, at its sole discretion, from time to time, within such time frames as BIBC may require and in form and substance acceptable to BIBC.  Should BANK become aware of the use of any Accounts by another financial institution, BANK will promptly cause such use and/or activity to immediately cease and desist and shall promptly notify BIBC, in writing, of such circumstances.

13.     **Correspondent Bank Customers of BANK**.  BANK shall promptly deliver to BIBC, at BIBC's request: (a) such information/documentation as BIBC may require, at its sole discretion, from time to time, regarding any and all foreign banks that maintain correspondent accounts/relationships with BANK; and (b) explanations, descriptions and/or copies of the policies and procedures and systems adopted by BANK for managing its risk associated with such correspondent account customers.

14.     **Verification of Ownership and Resident Agent**.  In compliance with the USA Patriot Act, BANK shall verify in writing to BIBC, within such time frames as BIBC may require and in form and substance acceptable to BIBC: (a) the name and address of all owners of BANK and the nature and extent of each owner's interest; and (b) the name, address, telephone number, facsimile number and e-mail address of a resident in the United States authorized by BANK to accept service of legal process from the Secretary of Treasury or the Attorney General of the United States pursuant to Section 5318(k) of Title 31, United States Code. Should BANK become aware of any change regarding information provided to BIBC pertaining to the former's ownership and/or resident agent, BANK shall promptly notify BIBC of such change and shall re-verify such information in writing to BIBC, in form and substance acceptable to BIBC.  Notwithstanding the foregoing, BANK shall re-verify in writing to BIBC, as often as BIBC may require from time to time, the ownership and resident agent information specified above, within such time frames as BIBC may require and in form and substance acceptable to BIBC.

15.     **Illicit Transactions and/or Activities**.  BANK shall, at all times, make reasonable and regular efforts to: (a) restrict and screen the use of an Account, and (b) monitor and review the transactions and activities passing through an Account, to ensure that no Account is used as a

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

conduit for illicit transactions and/or activities including, but not limited to, money laundering and terrorism. Should BANK at any time detect any transaction and/or activity passing through an Account which BANK either knows or suspects involves illicit activity, BANK shall immediately advise BIBC of the same in writing and shall promptly provide BIBC with any and all information and documentation related thereto that is requested by BIBC at its sole discretion.

16.   **Terrorism and Money Laundering Prevention, Detection and Reaction**. In a mutual effort to prevent and detect illicit transactions and activities from passing through Accounts:

A.   BANK shall develop and implement policies, procedures and systems to prevent, detect and react to money laundering and terrorist activities passing through BANK, and particularly through any of the Accounts, including without limitation, policies, procedures and systems to ensure knowledge of BANK's customers and for risk classifying BANK's customers and accounts, and performing appropriate levels of due diligence with respect to BANK's customers and accounts. Such policies, procedures and systems shall be in compliance with the laws applicable to BANK and with international principles regarding anti-money laundering, know your customer, and customer and account due diligence practices. At BIBC's request, from time to time, BANK shall promptly deliver to BIBC explanations, descriptions and/or copies of BANK's anti-money laundering/ anti-terrorism policies, procedures and systems.

B.   BANK agrees to promptly review all notices, circulars and/or advisories, issued by United States governmental authorities, which are aimed at identifying, preventing and detecting money laundering, terrorism and other illicit activities and to promulgate and implement in a prompt manner appropriate policies and procedures to prevent any Account from being used as a conduit for such illicit activities.

C.   BANK shall promptly notify BIBC of any instance where BANK has been made the subject of (a) any criminal action of any nature by any governmental authority; or (b) any regulatory action related to terrorism and/or money laundering by any bank supervisory authority.

D.   BIBC may, from time to time, at its sole discretion, visit BANK's office(s) in order to conduct a review of BANK's development and implementation of policies, procedures and systems for the prevention, detection and reaction to terrorism and money laundering. Such review may include an interview with BANK's compliance and/or auditing officers to discuss the development and implementation of such policies, procedures and systems.

17.   **Additional Requirements**. In addition to all other terms and conditions contained herein, as a condition to the provision of the correspondent banking services hereunder, BANK hereby represents, warrants and covenants to BIBC as follows:

A.   **Enhanced Due Diligence Policies**. BANK understands and agrees that BIBC may establish appropriate, specific, and, where necessary, enhanced, due diligence policies, procedures, and controls that are reasonably designed to detect and report instances of money laundering through any account maintained with BIBC. BIBC shall notify BANK, in writing, of any such

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

policies, procedures and controls, and BANK shall, within a reasonable time, comply with such policies, procedures and controls.

      B.    **Condition for Correspondent Banking Services**.  BANK understands and acknowledges that any correspondent banking services provided pursuant to this Agreement are conditioned on BANK's full, complete, and timely compliance with the provisions of this Agreement.

      C.    **Annual Risk Assessment**. BANK, upon BIBC's request, will provide documentation as may be requested by US regulatory or other US authorities, and/or BIBC compliance areas.

      D.    **OFAC**.  Using a name search software, which includes all the lists published by OFAC (the "**OFAC Lists**"), BANK shall conduct scrubbing of BANK's customers when (i) opening an Account(s); (ii) before sending any transaction (including, without limitation, wires) directly to BIBC; and (iii) any time the OFAC Lists are updated. BANK will not permit a BANK customer that conducts business with any US OFAC-blocked countries, named entities, or US PATRIOT ACT Section 311 (International Money Laundering Abatement and Anti-Terrorist Financing) targets to use its correspondent account at BIBC to process any transactions. BANK shall certify, annually, via Authenticated Swift Message (hereinafter, "**Authenticated Message**"), that neither BANK nor its customers are sending nor will they send any transaction, of any type to BIBC that includes or involves any country blocked, sanctioned, etc., by the United States of America, or with any company affiliated with such blocked or sanctioned countries.

      E.    **Prohibition Against Internet Gambling Business**.  The Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") prohibits any person engaged in the business of betting or wagering from knowingly accepting payments in connection with Unlawful Internet Gambling, including payments made through credit cards, electronic funds transfers and checks. UIGEA requires U.S. financial institutions, such as BIBC, to identify, block, or otherwise prevent or prohibit such payments. To comply with UIGEA, BIBC will not open or maintain an account for any person and/or entities engaged in Internet Gambling Business. At all times in which BANK maintains an Account with BIBC, BANK hereby warrants and represents to BIBC that BANK does not do business with persons engaged in an Internet Gambling Business and that BANK will notify BIBC in writing prior to doing business with any Internet Gambling Business. BANK further represents to BIBC that BANK will not allow transactions from Internet Gambling Businesses to be directed to BANK's Accounts at BIBC and will not allow transactions from any persons who engage in Internet Gambling Businesses to be directed to BANK's Accounts at BIBC.

      For purposes hereof:

      (i) "**Unlawful Internet Gambling**" means the placing, receiving, or otherwise knowingly transmitting of a bet or wager by any means which involve the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable U.S. or foreign law.

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

(ii) "**Internet Gambling Business**" means the business of placing, receiving, or otherwise knowingly transmitting a bet or wager by any means which involves the use, at least in part, of the Internet.

F.     **Bearer Share Customers**.  BANK hereby represents and warrants that, as of the date hereof, it has no customers that issue bearer shares, except for those customers disclosed to BIBC in writing (as the list of such customers may be amended from time to time, the "**Bearer Share Customers**"). BANK hereby covenants that no transactions or other activities will be conducted through an Account in connection with, or on behalf of, any Bearer Share Customer. BANK further commits to use its best efforts to (i) require that the Bearer Share Customers amend or otherwise modify their organizational documents to explicitly prohibit the issuance of bearer shares, and/or (ii) wind down, limit or terminate BANK's relationship with such Bearer Share Customers.

G.     **Casino Customers**.   BANK hereby covenants that no transactions or other activities will be conducted through an Account in connection with, or on behalf of, any customers, which, as its primary business, owns, leases, or operates any casino or gambling facility.

H.     **Money Services Businesses**.  BANK covenants that it shall not use any Account for the purpose of or in furtherance of, or otherwise in connection with, a Money Services Business (as hereinafter defined) or like undertaking, from time to time, unless BIBC has otherwise previously approved such use in writing.  For purposes of this Agreement, the term "**Money Services Business**" means any business that involves any of the following activities: (i) currency dealer or exchangers; (ii) check cashers; (iii) money transmitters; (iv) issuer, seller or redeemer of traveler's checks, drafts, money orders or any stored value medium; or (v) any other business that conducts similar business or activities to those listed in items (i) through (iv) herein.

I.     **Foreign Account Tax Compliance Act ("FATCA"):**  BANK hereby acknowledges and agrees that it shall deliver to BIBC at the time or times prescribed by law and at such time or times requested by BIBC documentation as may be deemed necessary for BIBC to determine that BANK has complied with applicable obligations under FATCA.  BANK further agrees to immediately notify of a change in circumstances (as such term is defined in FATCA) with respect to the BANK's FATCA status and provide BIBC with such information and/or documentation requested by BIBC. In case that BIBC is not able to determine BANK's FATCA status, BIBC may withhold 30% on withholdable payments made to a payee that is foreign financial institution ("**FFI**").

J.     **Comprehensive Iran Sanctions, Accountability, And Divestment Act Of 2010 ("CISADA"):**  In compliance with CISADA, the BANK warrants  and represents to BIBC that : (a) BANK and its clients do not engage directly or indirectly in any transactions and/or activities that facilitate the acquisition of weapons of mass destruction or weapons delivery systems by the Government of Iran; (b) BANK and its clients do not engage directly or indirectly to facilitate the activities of Iranian financial institutions, including the Central Bank of Iran, that support the activities listed above; (c) BANK and its clients do not provide directly or indirectly financial

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

**CORRESPONDENT BANK AGREEMENT**

services to the Iranian Revolutionary Guard Corps or any of its agents or affiliates; (d) BANK and its clients do not maintain directly or indirectly any correspondent account(s) for any Iranian-Linked Financial Institution designated under the International Emergency Economic Powers Act (**"IEEPA"**).

18.   **Disclosure**.   At the request of BIBC, the Office of the Commissioner of Financial Institutions of Puerto Rico (the "Commissioner") as the main regulator of BIBC, or any U.S. governmental authority, and in connection with any suspected illicit activity allegedly conducted through an Account, BANK shall promptly provide BIBC, the Commissioner and/or such U.S. governmental authority with any information and/or documentation that is requested concerning BANK, an Account, the suspected illicit activity and any officer, employee and/or agent of BANK involved with an Account or with such activity.

19.   **Waiver of Confidentiality**.   As concerns any requests for information and/or documentation from BIBC, the Commissioner or from any U.S. governmental authority, or as a result of any Process (as defined below) and/or Proceeding (as defined below) relating to BANK, an Account and/or to any transaction or activity passing through an Account, BANK hereby waives, to the fullest extent possible, any claims, right or privilege of bank secrecy or confidentiality under the laws of any jurisdiction.

20.   **Funds Transfers**.

   A.   **Definitions**.   The terms used herein shall have the meaning assigned to them by applicable state law, or if none, by the Federal Reserve Board's Regulation J.

   B.   **Disclaimers.   Nothing set forth herein shall obligate BIBC to accept and execute a payment order, or the cancellation or amendment thereof, and BIBC shall only be deemed to have accepted a payment order, or the cancellation or amendment thereof, upon its execution thereof.   BIBC shall have no obligation or responsibility to detect errors contained in a payment order, and BANK confirms that the Security Procedure (hereinafter described) is not designed to detect errors**.

   C.   **Payment Orders**.   Payment orders for funds transfer transactions, and the cancellation or amendment thereof (**"Payment Orders"**), shall be communicated to BIBC only via the Online Banking Platform, facsimile, SWIFT or by original writing.   Payment Orders must be sent to and received at the office of BIBC at Suite 1410, 250 Muñoz Rivera Avenue, San Juan, Puerto Rico, 00918 (**"Main Office"**).   Payment orders must be received at the Main Office on a business day and before such cut-off time(s) as the Main Office designates from time to time for Payment Orders.   Payment Orders not received on a business day or received after the designated cut-off time (s) shall not be processed by BIBC until its next succeeding business day.

   BIBC reserves the right to handle Payment Orders received from BANK and other customers in such order as is selected by BIBC, at its sole discretion.   BIBC further reserves the right to reject or delay its acceptance and/or execution of any Payment Order which BIBC determines is unclear, incomplete or otherwise unsatisfactory to BIBC.

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

If a Payment Order does not specifically designate the Account which is to serve as the source of payment of the Payment Order, any Account of BANK at BIBC shall be an authorized account for such Payment Order, if payment of the Payment Order from such Account is not inconsistent with restrictions imposed by BANK on the use of that Account. BIBC will use commercially reasonable efforts to provide BANK with written notice of its rejection of any Payment Order on or prior to the execution date of the Payment Order; provided, however, that BIBC shall not be liable to BANK for interest compensation as a result of its failure to give such notice. BANK agrees that this procedure constitutes a commercially reasonable means of notice.

BIBC may condition its acceptance and/or execution of a cancellation or amendment of a Payment Order by any one or all of the following: (a) receipt of adequate information reasonably identifying the original Payment Order; (b) an indemnity or bond holding BIBC harmless from any and all liability arising from BIBC's execution of the amendment or cancellation; (c) BIBC's receipt of sufficient time to provide it with a reasonable opportunity to act; and (d) compliance with the Security Procedure (hereafter described).

D.    **Security Procedure and Verification**.  All Payment Orders issued by BANK to BIBC on an Account shall be subject to verification by BIBC, prior to execution, through Call Back, Security Token (if available), or Email Advice (the "**Security Procedure**").  BANK hereby confirms that the Security Procedure is commercially reasonable in light of BANK's circumstances and requirements and the type and frequency of funds transfer transactions contemplated by BANK through the Accounts. At BIBC's request, BANK will execute and deliver to BIBC a receipt for the Security Procedure materials in the form requested by BIBC.

Bank understands that Payment Order requests will be subject to the selected Security Procedure. Such Security Procedures are designed to assure the authenticity of the requests issued to BIBC.  BANK also understands that the Security Procedure is not designed to detect errors in the content or transmission of a Payment Order, and BANK assumes no responsibility with respect thereto.

**Call Back** – If Call Back is selected as the applicable Security Procedure, BIBC will perform a call back of any Payment Order received by calling the telephone number listed for BANK in BIBC's database.

**Security Token** – If Security Token is selected as the applicable Security Procedure, BIBC will deliver either a physical or virtual security token (a "**Token**") to BANK. At BIBC's request, BANK or an Authorized Person shall deliver to BIBC a written acknowledgment of receipt of the Token, in the form required by BIBC.  This Token is strictly confidential and access to the Token should only be provided to Authorized Persons.  BANK should instruct such Authorized Persons not to provide access to the Token to anyone and BANK must establish and maintain procedures to assure the confidentiality of the Token.  BIBC assumes no responsibility to discover, audit or report to BANK any possible breach of security by BANK's agents, personnel or representatives or unauthorized disclosure or use of such Token.  BANK shall promptly notify BIBC of any suspected compromise of security (whether or not involving its agents, personnel or

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

representatives). BIBC will replace the old Token with a new Token in accordance with its current security procedures. BIBC reserves the right to change the Token upon notice to BANK. BANK will be responsible for any liability, loss, or damage resulting from BIBC's actions in accordance with instructions to BIBC from unauthorized persons when utilizing a Token assigned to BANK. BANK understands that it will not be contacted to verify the Payment Order request and BIBC will act upon the request once the Token validation is completed.

**Email Advice** – If Email Advice is selected as the applicable Security Procedure, BIBC will use an Email Advise of any Payment Order received by emailing a confirmation to email(s) address (es) listed for BANK in the BIBC's database for such purpose.

The Security Procedure is strictly confidential and should not be disclosed by BANK or an Authorized Person to anyone else. BANK covenants to establish and maintain adequate procedures to safeguard the Security Procedure. BANK further covenants that, should BANK or an Authorized Person have reason to believe that the Security Procedure has become known to any unauthorized person, BANK shall immediately notify BIBC (via the Online Banking Platform, facsimile, in writing or SWIFT) of such disclosure.

Upon verification of a Payment Order pursuant to the Security Procedure, BIBC is authorized and directed to execute, pay, and/or act upon such Payment Order pursuant to its terms, without need of any further inquiry of BANK, and to debit the Account from which the funds transfer is to be effectuated. If a Payment Order is duly verified pursuant to the Security Procedure, except as otherwise provided by applicable law, such a Payment Order will be deemed effective as BANK's Payment Order and BANK shall be obligated to pay BIBC the amount of the Payment Order as provided therein, whether or not such Payment Order was in fact authorized by BANK or any of its Authorized Persons. If BIBC is unable for any reason whatsoever to verify a Payment Order in accordance with the selected Security Procedure, BIBC shall have no obligation to execute same; and BIBC shall not be liable to BANK for its failure to complete such verification and/or to execute the Payment Order.

Notwithstanding any provisions herein to the contrary, BIBC may refrain from executing a Payment Order if BIBC believes that it may not have been authorized by BANK or that there may be a security breach with respect to any Account (s) affected thereby.

E. **Authorized Persons**. BIBC is hereby authorized to deliver Security Procedure materials to those Authorized Persons listed by BANK in the Authorization Form delivered by BANK to BIBC. BANK may, from time to time, add or delete from the list of Authorized Persons, however, all such additions and deletions must be communicated to BIBC in writing, subject to verification pursuant to the Security Procedure, and received by BIBC at its Main Office at least five (5) business days in advance of the effective date of the change.

F. **Beneficiary and Intermediary**. BANK shall be solely responsible for correctly identifying the beneficiary's account and beneficiary's bank in each Payment Order. Furthermore, BIBC may, at its discretion, require BANK to select, and identify in a Payment Order, the intermediary bank (s) to be used in the funds transfer.

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

BIBC shall rely exclusively upon the identifying number contained in a Payment Order for the intermediary or beneficiary's bank, as well as for the beneficiary's account. In the event of an inconsistency in a Payment Order between the name and identifying number of any intermediary or beneficiary's bank or beneficiary's account, BANK shall be solely and fully liable to BIBC for any loss, damage, liability, expense and cost, including reasonable attorney's fees, incurred by BIBC as a result of such misdescription or inconsistency.

G.   **Funds Transfer System**.   BIBC shall be authorized to use any funds transfer system that BIBC, in its sole discretion, deems appropriate.   BANK acknowledges that each funds transfer systems is governed by its own operating rules and regulations and BANK agrees that each Payment Order shall be subject to the rules and regulations of the funds transfer system through which it is transmitted, including all interbank compensation rules governing the settlement of claims for compensation or adjustments of errors between member banks.   To the fullest extent permitted by applicable law, (a) any funds transfer system selected by BIBC in executing a Payment Order shall be considered the agent of BANK; (b) BIBC shall not be liable for any errors, negligence, suspension or default of any such system; and (c) BIBC shall not be liable for any delay, misdelivery or failure of delivery in the transmission of any Payment Order through any such system.

H.   **Restrictions**.   BANK confirms that it has not communicated to BIBC any restrictions and/or limitations whatsoever relevant to Payment Orders, other than those specifically noted in each Payment Order instruction.   Notwithstanding the foregoing, no such restriction and/or limitations shall be binding upon BIBC unless BIBC has previously agreed to them in writing.

I.   **Overdraft**.   BANK agrees that each Payment Order shall not exceed the balance of readily available funds in the Account from which the funds transfer is to be effectuated, and that BIBC shall have no duty to execute any Payment Order if it exceeds the balance of readily available funds in such Account.   If BIBC, at its sole discretion, agrees to execute a Payment Order, thereby creating an overdraft in an Account, BANK agrees to promptly pay BIBC any overdraft balance resulting in such Account, an overdraft charge, and any interest accruing on such overdraft at the rate established by BANK from time to time as provided in Schedule B –Schedule of Fees and Charges.   BANK agrees that BIBC may set-off the amount of any such overdrafts, charge and interest against any of BANK's Accounts at BIBC.

J.   **Limitation of Liability**.   To the maximum extent permitted by applicable law, BIBC shall not be liable to BANK for any special, indirect or consequential damage resulting from BIBC's delayed or improper execution of a Payment Order or for its failure to execute a Payment Order, and BANK shall be limited exclusively to BANK's expenses directly related to the transaction, incidental expenses and interest losses.

K.   **Foreign Currency**.   Should BIBC receive a Payment Order from BANK requiring BIBC to effectuate a payment in a currency other than U.S. Dollars, BIBC shall proceed to debit BANK's Account for the U.S. Dollar equivalent of the amount of foreign currency to be paid, at

# BANCREDITO INTERNATIONAL BANK CORPORATION

(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

BIBC's prevailing rate of exchange prior to the execution or payment of the order. BANK further agrees that the execution of a Payment Order which requires payment in a currency other than U.S. Dollars may be reasonable delayed by BIBC, as appropriate, in order to permit BIBC to complete the conversion of currency.

L.    **Advises/Statements; Notification of Error /Discrepancy**.    Should BANK maintain an account relationship with BIBC, BIBC shall provide BANK with an advice of debit of account and/or with a statement of account, which advice and/or statement will provide BANK with sufficient information to identify each Payment Order.  BANK agrees to examine each advice and/or statement promptly upon receipt and to notify BIBC immediately via verified written communication of any error or discrepancy in any such records. BIBC shall not be liable to BANK unless BIBC is notified of an error or discrepancy within twenty (20) days from the date that the advice and/or statement identifying the Payment Order is sent or made available to BANK, whichever is earlier. Furthermore, BANK shall be precluded from asserting any claim against BIBC with respect to a Payment Order (or from otherwise objecting to any debit thereof to BANK's Account), unless BIBC has received verified written notification from BANK of any error or discrepancy with regard to a Payment Order within twenty (20) days from the date the advice and/or statement identifying the Payment Order is sent or made available to BANK, whichever is earlier.

M.    **Fees**.    BANK agrees that BIBC shall charge, and BANK shall pay to BIBC promptly, such fees as BIBC may charge from time to time for funds transfer services.  Such fees shall be posted in BIBC's current Schedule B – Schedule of Fees and Charges, and may be changed from time to time without prior notice to BANK.

N.    **Notice/ Funds Transfers**.    All notices directed to BIBC relating to funds transfers shall be sent to the Main Office to the attention of the Correspondent Banking Department. All notices directed to BANK shall be directed to BANK's last known address as reflected in BIBC's records.

21.    **Process**.    Should BIBC be served with or receive any process, subpoena, summons, complaint, warrant, distrain, levy, garnishment, lien, order, injunction, execution, pleading or other legal process and/or should BIBC become involved in any judicial and/or administrative proceeding (hereinafter jointly or severally referred to as **"Process"** and/or "**Proceeding**"), which involves or affects, or which BIBC believes, at its sole discretion, may involve or affect BANK, an Account and/or any transaction or activity passing through an Account, then BIBC: (a) may, at its sole discretion, and without liability to BANK, thereupon withhold any payment, withdrawal or transfer from any such Account until the Process and/or Proceeding is annulled or disposed of to BIBC's sole satisfaction; and (b) will follow (and may rely on absolutely) the advice of its legal counsel as to the appropriate response to such Process and/or Proceeding, and will have no responsibility or liability whatsoever to BANK for doing so, even if such advice is mistaken. BANK agrees to the foregoing and recognizes that BIBC's current policy (which is subject to change based on advice of legal counsel) is to comply with any such Process and/or Proceeding as concerns information and/or records maintained by BIBC. Furthermore, BANK acknowledges and agrees that BIBC will have no obligation to act as legal representative or agent of BANK in

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

connection with any Process and/or Proceeding or to respond in any way to any such Process and/or Proceeding on behalf of BANK. Consequently, should BANK wish to interpose a legal objection to any such Process and/or Proceeding it will be incumbent on BANK itself to independently do so. Notwithstanding any of the foregoing, it is expressly agreed that BIBC will not disclose to BANK: (a) the existence of any U.S. federal grand jury subpoena served upon BIBC or (b) the filing of any Suspicious Activity Report (SAR) by BIBC.

BANK shall deliver to BIBC any and all information/documentation available to BANK, concerning the Account and/or any transaction or activity passing through the Account, as is requested by any Process and/or in any Proceeding, and BANK shall reimburse BIBC for any and all costs and expenses (including reasonable fees of legal counsel or paralegals, whether or not suit be filed) incurred by BIBC by reason or as a result of any Process and/or Proceeding.

22.   **Service Charges**. Any Account, whether active or dormant, shall be subject to service and maintenance charges heretofore adopted by BIBC and now in effect (as reflected in BIBC's current Schedule B – Schedule of Fees and Charges) and such charges as may be hereafter adopted by BIBC. New service and maintenance charges and changes in existing charges shall become effective upon thirty (30) day's prior notice thereof. Such charges may be regularly deducted from each Account and BIBC shall not be liable for the dishonor of any items because of insufficient funds resulting from the deduction of such charges. BANK acknowledges the receipt of BIBC's current Schedule B – Schedule of Fees and Charges.

23.   **Information Disclosure**. BIBC is authorized to release any information or documentation relevant to BANK and/or any Account that is requested pursuant to any summons, subpoenas, order or other Process. BIBC shall also have the right to report information about BANK and/or any Account to any bank or financial institution, as well as to any commercial establishments, to whom BANK gives BIBC as a reference. BIBC is also authorized to disclose to parties purporting to have item(s) drawn on an Account whether such account has a collected balance sufficient for payment of the item(s).

24.   **Termination of Account by BIBC**. BIBC may close any or all Account(s) of BANK at any time by giving written notice to BANK of such intention through the registered mail or by courier service, which notice shall be directed to BANK at BANK's last known address. BIBC shall, at its sole discretion, either wire transfer or mail a check to BANK for the balance, if any, of funds in deposit in the Account. Upon termination of the Account, BIBC shall thereafter be relieved of any further legal responsibility or liability on such Account. Upon the mailing of notice of intention to close an Account, BIBC may thereafter refuse to accept deposits to such an Account, decline to collect any item deposited therefor, or to transact any matter in relation thereto; provided, however, that BIBC may continue to receive and act upon Payment Orders issued in the name of BANK, as provided herein, until BANK actually receives such notice and has had a reasonable opportunity to act thereon. BIBC shall not be liable for dishonoring any item drawn on an Account which is to be closed if the item is presented for payment to BIBC after remittance by BIBC of notice of its intention to close the Account.

# BANCREDITO INTERNATIONAL BANK CORPORATION
(An International Banking Entity licensed by the Office of the Commissioner of Financial Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

Notwithstanding any of the foregoing, and without limiting and/or restricting any rights or obligations BIBC may have under applicable law, BIBC shall have the right, at its sole discretion, to terminate any and all Account(s) without any prior notice to BANK and without any grace period for the closing of the Accounts:

A.      Should BIBC determine, at its sole discretion, that BANK has failed to comply with any provisions of the BSA, the USA Patriot Act or any other applicable law;

B.      Should BANK fail to deliver to BIBC, within such time frames as BIBC may require and in form and substance acceptable to BIBC, such information/documentation as BIBC may request from BANK in order for BIBC to comply with the requirements of the BSA, the USA Patriot Act and/or any other applicable law; or

C.      Should BIBC receive notice from the Secretary of the Treasury or the Attorney General of the United States that BANK has failed:  (i) to comply with a summons or subpoena issued to BANK under the USA Patriot Act; or (ii) to initiate proceedings in an United States court contesting such summons or subpoena.

BIBC shall not be liable to BANK or any other person under any law and in any court or arbitration proceeding for terminating Accounts(s) in accordance with the provisions of this paragraph and/or pursuant to the USA Patriot Act.

25.      **Termination of Account by BANK**.  BANK may request the termination of an Account at any time by giving written notice of such request to BIBC through the registered mail or by courier service, which notice shall be directed to BIBC at its Main Office.  The BANK whereby acknowledges that in order to terminate the Account, BIBC shall perform such due diligence and other procedures that it understands in its sole discretion are called for before terminating the Account; and may impose an account closing fee in such amount as may be established by BIBC from time to time.  Prior to terminating the Account, BIBC may exercise its rights under Sections 27, 28 and 29 of this Agreement against the funds in the Account.  BIBC shall, at its sole discretion, either wire transfer or mail a check to BANK for the balance, if any, of funds in deposit in the Account.  Upon termination of the Account, BIBC shall thereafter be relieved of any further legal responsibility or liability on such Account.  Upon the mailing of notice of intention to close an Account, BIBC may thereafter refuse to accept deposits to such an Account, decline to collect any item deposited therefor, or to transact any matter in relation thereto; provided, however, that BIBC may continue to receive and act upon Payment Orders issued in the name of BANK, as provided herein, until BIBC actually receives such notice and has had a reasonable opportunity to act thereon.  BIBC shall not be liable for dishonoring any item drawn on an Account which is to be closed if the item is presented for payment to BIBC after remittance by BIBC of notice of its intention to close the Account.

26.      **Forms & Checks**:  BIBC will arrange for the printing of all checks, deposit slips, and other forms and documents necessary for the handling and operation of an Account (the "**Account Form**").  BIBC shall not accept any document or instrument other than an Account Form with reference to any transaction pertaining to any Account, unless BIBC, at its sole discretion, has

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

---

previously agreed in writing with BANK to accept such instrument or document in addition to or in lieu of an Account Form. BANK shall maintain custody and control of all checks and checkbooks received from BIBC relating to an Account in a safe and sound manner, so as to avoid any possibility of theft, loss or alteration. Furthermore, BANK shall immediately report to BIBC in writing, by facsimile, SWIFT or mail delivery by an internationally recognized courier, the theft, loss or alteration of any check or checkbook.

27.   **Indemnity**.  In consideration for the opening of Account(s), as well as other financial accommodations extended from time to time by BIBC to BANK, BANK shall indemnify and hold BIBC harmless, from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs and expenses (including without limitation, reasonable attorneys' fees and attorney's fees incurred on appeal whether or not suit be filed), and any other costs or disbursements of any kind or nature whatsoever, by whomsoever brought or caused, which may be imposed upon, incurred by, or asserted against BIBC, in any way relating to, or arising out of: (a) this Agreement; (b) the presentation, payment or dishonor of any item drawn on an Account; (c) the acceptance of and/or any breach of warranty regarding any item for deposit in an Account; (d) the execution of any Payment Order for a funds transfer transaction on an Account; (e) any Process and/or Proceeding relating to or affecting BANK or an Account; (f) any action taken or omitted by BIBC pursuant to the terms and conditions of this Agreement; (g) BIBC's compliance with any stop payment order placed by BANK; (h) the breach by BANK of any representation, agreement, terms or conditions of this Agreement; and (i) any dispute between BIBC and BANK that may arise regarding this Agreement, an Account and/or any transaction/activity occurring through an Account (jointly and/or severally, the "**Indemnified Liabilities**").

28.   **Right of Set-Off**.  To the fullest extent permitted by law, BIBC is authorized to charge and/or to set-off against any Account of BANK at BIBC, without prior notice to or the consent of BANK: (a) the amount of any Indemnified Liabilities; (b) the balance of any overdraft in an Account, plus interest thereon and any overdraft charge; and/or (c) the amount of any other Liabilities. The term "**Liabilities**" means any and all liabilities and obligations of BANK to BIBC, whether direct or indirect, absolute or contingent, joint, several or independent, secured or unsecured, liquidated or unliquidated, contractual or tortious, for principal, interest, fees or expenses, due or to become due, now existing or arising in the future, for personal or business purposes, that are owed or payable to BIBC or held by BIBC for BANK's account or as agent for another or others, whether created directly, or now or in the future acquired by assignment, participation or otherwise, and whether incurred by BANK as primary debtor, co-maker, surety, endorser, guarantor or otherwise. BIBC shall not be liable for the dishonor of any item(s) resulting from insufficient funds in any Account because of any charge or set-off to such Account for any of the foregoing.

29.   **Pledge and Security Interest**.  In addition to any right of set-off, BANK hereby assigns and pledges to BIBC and grants to BIBC a security interest in any and all Accounts of BANK at BIBC, to secure the payment of any Liabilities and Indemnified Liabilities whether now existing or hereinafter arising. BANK agrees to execute and deliver to BIBC such instruments or documents as the latter may require in order to perfect and maintain the aforesaid security interest. This assignment, pledge and security interest shall continue in full force and effect until all Liabilities

---

**BANCREDITO INTERNATIONAL BANK CORPORATION**

(An International Banking Entity licensed by the Office of the Commissioner of Financial Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

**CORRESPONDENT BANK AGREEMENT**

and Indemnified Liabilities have been paid in full. BANK hereby authorizes BIBC to file any financing statements in the applicable jurisdictions in order to perfect the security interest granted under this Agreement.

30. **Prohibited Pledge or Encumbrance**. No Account may be pledged and/or encumbered without the prior written consent of BIBC, which must be obtained after reasonable written notice has been given to BIBC of such intended pledge or encumbrance. Any pledge and/or encumbrance of an Account must be effectuated through a written instrument acceptable to BIBC in form and substance.

31. **Notices**. All remittances, statements, items, notices and other communications or writings sought to be given by BIBC to BANK in connection with an Account shall be deemed to have been delivered to BANK upon the mailing thereof through the US mail or upon the sending thereof through a courier service, to BANK's last known address or at such other address as BANK may designate in writing. Notice from BANK to BIBC will be considered effective when delivered in writing and received by a duly authorized officer of BIBC at its Main Office on a business day during regular banking hours.

32. **Force Majeure**. Without limiting the generality of other provisions of this Agreement or any other agreements between BIBC and BANK, BIBC shall not be liable to BANK for any failure, omission, delay, interruption or error in the performance of any of the terms, covenants and conditions of this Agreement or otherwise, due to causes beyond the control of BIBC including, without limitation, bank moratoriums or holidays, currency restrictions, trading suspensions, acts of God, insurrection, wars, hostilities, political insurrection, weather, accident, equipment failure, public enemy or superior governmental authority, civil commotion, legal compulsion, insolvency or ordinary negligence or failure to act by other financial institutions, third party or service provider. Furthermore, BIBC shall have no responsibility or liability for any blockage or reduction in the availability of funds in an Account due to restrictions imposed or actions taken by any governmental, supervisory or monetary authority or by any other third party. BIBC's sole liability and obligation with respect to any Account shall be to pay BANK the credit balance of each Account after giving effect to such applications, transfers, reductions, deductions and/or set-offs permitted under this Agreement or any other agreement between BIBC and BANK.

33. **Standard of Care and Limitation of Liability**. In receiving items for deposit or collection, BIBC acts only as BANK's collecting agent and assumes no responsibility beyond the exercise of ordinary due care. If BIBC acts with ordinary care, it shall have no liability to BANK and BANK shall indemnify, defend and hold harmless BIBC against any loss or cost, including, but not limited to, attorneys' fees, arising from BIBC's provision of services hereunder. In particular, BIBC will be deemed to have exercised ordinary care where BANK's failure to examine reports or confirmations provided to it and to notify BIBC of any discrepancies, within time periods specified by BIBC from time to time, contributed to the loss or cost at issue; and BIBC shall not be liable for a loss or cost to the extent that such loss or cost arises out of an act of omission, whether or not authorized, of an employee, agent or contractor of BANK. Additionally, BIBC will not be liable to BANK for any act, omission, misconduct and/or negligence of any of BIBC's affiliates, branches. subsidiaries, collecting agents or duly selected correspondent banks,

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

### CORRESPONDENT BANK AGREEMENT

---

nor for any losses in transit of any item or document, and each affiliate, branch, subsidiary, collection agent or selected correspondent bank shall be liable for its own acts, omissions, misconduct and/or negligence.  BIBC's liability to BANK, if any, for any claim by BANK involving the Account shall be limited to actual damages incurred by BANK and shall not include consequential, punitive or other damages. Furthermore, any such damages shall be limited to the face amount of any transaction at issue.

34.   **Waivers**.  BANK waives and/or authorizes BIBC to waive on BANK's behalf demand, presentment, protest, notice of protest and notice of dishonor as to all items presented to or received by BIBC for deposit or collection on any Account and as to all trade facilities and other credit facilities granted by BIBC to BANK from time to time.

35.   **Miscellaneous**.

     A.   This Agreement and the performance hereunder and the transactions between BANK and BIBC relating to an Account shall be construed and governed in accordance with applicable federal and Puerto Rico laws and regulations, without regard to its conflict of law provisions.

     B.   The parties agree that all actions, suits or proceedings arising out of this Agreement, an Account or any transactions between BANK and BIBC relating to an Account shall be subject to the exclusive jurisdiction of the state or federal courts situated in San Juan, Puerto Rico.

     C.   With respect to any such action, suits or proceeding, BANK hereby expressly and irrevocably (1) submits to the exclusive jurisdiction of such courts to the fullest extent permitted by law; (2) waives any right to assert that this Agreement may not be enforced in or by such courts, and BANK agrees not to seek and hereby expressly waives any review by any court of any other country or jurisdiction which may be called upon to grant an enforcement of the judgment of any such court; (3) waives any objection it may now or hereafter have based upon improper venue or *forum non conveniens* with respect to such actions, suits or proceedings in such courts; and (4) agrees that service of process may be made upon BANK by service personally upon any officer of BANK or upon BANK at its address by registered or certified mail, return receipt requested or internationally recognized courier (with such service to be deemed effective when delivered or when delivery is refused), and BANK hereby waives compliance by BIBC with any requirement or applicable law which may require service to be made in any other manner.  Final judgment against BANK (a certified or exemplified copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness of BANK hereunder or thereunder) in any such actions, suits or proceedings shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.  Nothing herein shall be deemed to preclude or in any way limit the right of BIBC to sue or take any action against BANK in any court wherever located having jurisdiction over BANK or any of its assets or properties.

     D.   To the extent that BANK has or hereafter may acquire any immunity (sovereign or otherwise) from legal action, suit or proceeding, from the jurisdiction of any court or from set-off or any Process with respect to itself or any of its assets or properties, whether or not held for its

---

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

own account, BANK hereby irrevocably and unconditionally waives and agrees not to plead or claim such immunity in respect of its obligations hereunder.

      E.      The provisions of this Agreement may, at any time or times, be unilaterally modified or supplemented by BIBC by mailing appropriate notice thereof to BANK or by posting notice thereof in a conspicuous place at BIBC's Main Office; otherwise, no waiver or modification of this Agreement or of any covenant or condition herein shall be valid unless in writing, duly signed by all parties hereto.

      F.      The inapplicability or unenforceability of any provision of this Agreement shall not limit or impair the operation or validity of any other provision herein.

      G.      BIBC reserves the right to waive the enforcement of any of the terms of this Agreement with BANK with respect to any transaction or series of transactions.  The fact that BIBC, on any given occasion, may enforce or waive its rights does not obligate BIBC to enforce or waive similar rights in the future, nor will this be sufficient to modify the terms and conditions set forth in this Agreement.

      H.      This Agreement supplements the terms and conditions of any account opening agreements or service account agreement, as amended from time to time, executed by BANK and BIBC in connection with the opening of the Accounts and the provision of services.  This Agreement together with such other agreements contain the complete understanding and agreement between the parties hereto on the matters set forth herein and it supersedes all prior or contemporaneous agreements or understandings on such matters.  In the event of any conflict between the terms and conditions hereof and any other such agreement, the terms and conditions of this Agreement shall control.

      I.      This Agreement shall be binding upon the heirs, successors in interest and assigns of BANK.  Notwithstanding foregoing, the rights of BANK under this Agreement shall not be assignable without the prior written consent of BIBC, and any assignment without such prior written consent shall be null and void.

      J.      This Agreement shall remain in full force and effect at all times thereafter, unless subsequently cancelled or amended by BIBC in accordance with the provisions of this Agreement.

      K.      The use of captions and/or headings in this Agreement are for convenience only and are not part of this Agreement.  Accordingly, they shall not affect the meaning or interpretation of any of the provisions hereof.

<u>WAIVER OF TRIAL BY JURY</u>.   BANK AND BIBC HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION, PROCEEDING OR LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, ARISING OUT OF OR OTHERWISE RELATED TO, THIS AGREEMENT AND ITS SUBJECT MATTER, ANY ACCOUNTS OF BANK AT BIBC, OR ANY COURSE OF CONDUCT, COURSE OF DEALING,

**BANCREDITO INTERNATIONAL BANK CORPORATION**
(An International Banking Entity licensed by the Office of the Commissioner of Financial
Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR RELEVANT TO THE TRANSACTION(S) CONTEMPLATED HEREBY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE OPENING AND MAINTENANCE OF ANY ACCOUNT FOR BANK AT BIBC.

      L.    This Agreement may be executed in any number of several counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement in San Juan, this __25__ day of __JULY__ , 2017

**CAPITAL UNION BANK, LTD**

By:_____
Name:~~Ludovic Chechin-Laurans~~  ~~Luciana Silvera~~
Title:_____
      ~~AUTHORIZED SIGNATORIES~~

**BANCREDITO INTERNATIONAL BANK
CORPORATION**

By:_____
Name:_____
Title:_____

# BANCREDITO INTERNATIONAL BANK CORPORATION

(An International Banking Entity licensed by the Office of the Commissioner of Financial Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

---

### SCHEDULE A

### MINIMUM ACCOUNT BALANCE and RECIPROCITY DEPOSIT

| Account Type | Amount |
|---|---|
| Minimum Reciprocity Deposit: | |
| - Minimum DDA Balance | $      100,000.00 |
| - Additional DDA Balance, Time deposit (*) and/or | $ 10,000,000.00 |
| - Custody and safekeeping | $                  - |
| Total Minimum Reciprocity Deposit | $ 10,100,000.00 |
| | |
| (*) Time deposit conditions: | |
| - Term: | |
| - Rate: | |
| - Interest payment: | |

# BANCREDITO INTERNATIONAL BANK CORPORATION
(An International Banking Entity licensed by the Office of the Commissioner of Financial Institutions under Puerto Rico Act No. 52 of August, 1989, as amended)

## CORRESPONDENT BANK AGREEMENT

### SCHEDULE B

#### SCHEDULE OF FEES AND CHARGES

| Concept | Dollars (US $) |
|---|---|
| Internal Bank transfers to the same beneficiary | $0.00 |
| Internal Bank transfers to another beneficiary | $0.00 |
| Incoming Wire Transfers (each)* | $50.00 |
| Overdraft fee (each) | $75.00 |
| Overdraft interest rate (annual) | 15.00% |
| Incomplete KYC forms and payment no properly supported (each) (**) | $75.00 |
| All messages, modifications and returned wires | $75.00 |

(*) After August 1st 2017, will increase to $65.00 (each)
(*) Applicable from August 1st. 2017

| Outgoing Transfers Fee | | Cost |
|---|---|---|
| From | To | Dollars (USD) |
| $1.00 | $1,000.00 | $250.00 |
| $1,001.00 | $2,500.00 | $200.00 |
| $2,501.00 | $5,000.00 | $175.00 |
| $5,001.00 | $10,000.00 | $150.00 |
| $10,001.00 | $20,000.00 | $95.00 |
| $20,001.00 | > | $75.00 |

| Charges | Amount |
|---|---|
| Monthly Service Charge for Correspondent Services | $7,500.00 |
| Penalty fees for early withdraw of principal before the maturity date of Certificate or Time Deposit | • Maturity of 30 days - no interest is paid<br>• Maturity of 31 - 90 days - penalty of 30 days of interest<br>• Maturity of 91 - 365 days - penalty of 90 days of interest<br>• Maturity of 366 Days or more – penalty of 180 days of interest |

EAST\138477714.1

current balance at BANCREDITO        3,385,111.77   USD

Funds retained from BANCREDITO account with us    (1,041,676.73)   USD

**2,343,435.04**   USD    total owed by BANCREDITO



**EXHIBIT B**



**CAPITAL UNION BANK**

Nassau, September 26, 2017

Mrs. Nydia Rubero Alvarez
BANCREDITO
250 Munoz Rivera Ave. 14th Floor
San Juan – Puerto Rico

Dear Nydia,

We regret to inform you that our Board of Directors has requested the closing of our account with Bancredito.

Unfortunately the balance we maintain with you is required for operations with other counterparties as stated on our initial request dated September 12th and the subsequent communications on September 18th and 25th.

I hereby confirm the details of the initial form submitted and kindly request that you wire the funds as soon as possible to our account at SWISSQUOTE.

We understand Compliance and Board approval is required but considering the urgency explained we kindly request that you expedite the approval process.

Kind regards,

**CAPITAL UNION BANK LTD.**

Ludovic Chechin-Laurans                    Luciana Silvera

**EXHIBIT C**



**CAPITAL UNION BANK**

Nassau, October 6, 2017

Mrs. Nydia Rubero Alvarez
Bancredito International Bank Corp.
250 Munoz Rivera Ave. 14th Floor
San Juan – Puerto Rico

Dear Nydia,

Please note that the Board of Directors of Capital Union Bank Ltd. has informed Management of their decision to close the bank account your institution maintains with us.

In order to rapidly formalize this decision, we hereby authorize you to debit our account with you, number 50010000158, for the exact total balance in your current account number 3458690.2001 with Capital Union Bank Ltd., which as of today amounts to USD 1,041,676.73.

Please note that we will be debiting this very same amount to your account and will proceed to close it.

The remaining balance in our account with Bancredito International Bank Corp. should then be wired as per previously sent instructions to our account with SWISSQUOTE and our account should be closed as requested since September 26th.

Kind regards,

CAPITAL UNION BANK LTD.

Ludovic Chechin-Laurans                          Rolf Schuermann

**EXHIBIT D**

**Teresa Macias**

| | |
|---|---|
| **From:** | Ludovic Chechin-Laurans <lcl@capitalunionbank.com> |
| **Sent:** | Thursday, October 26, 2017 11:53 AM |
| **To:** | Ana Faria |
| **Cc:** | Nydia Rubero; Frances M. Diaz; Gregorio D'Andrea; Luciana Silvera; Rolf Schuermann |
| **Subject:** | RE: I M P O R T A N T  communication |

Dear Mrs Faria,

I tried to call you. I would appreciate if you could return my call this afternoon.

I want to make sure that we have a common understanding that should you not be willing to return our funds this week nor willing to give us a timeline for the account closing, we will start a legal action, inform our regulator and also formally contact OCIF.

Looking forward to talking to you,

Best regards,

Ludovic Chechin-Laurans  |  CEO



**CAPITAL UNION BANK**

PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com

**From:** Ludovic Chechin-Laurans
**Sent:** Thursday, October 26, 2017 8:48 AM
**To:** 'Ana Faria' <afaria@bancredito.com>
**Cc:** Nydia Rubero <nrubero@bancredito.com>; Frances M. Diaz <fdiaz@bancredito.com>; Gregorio D'Andrea <gdandrea@bancredito.com>; Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Mrs Faria,

Would you be available for a call at 10.00 or 11.00 am today ?

Best regards,

LCL

Ludovic Chechin-Laurans  |  CEO

**EXHIBIT E**

1



PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com

**From:** Ana Faria [mailto:afaria@bancredito.com]
**Sent:** Wednesday, October 25, 2017 6:26 PM
**To:** Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Cc:** Nydia Rubero <nrubero@bancredito.com>; Frances M. Diaz <fdiaz@bancredito.com>; Gregorio D'Andrea <gdandrea@bancredito.com>; Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Mr. Chechin-Laurans,

Our team is working diligently to complete the compliance review, as required by the Correspondent Banking Agreement. At this time, I cannot provide you with a specific date for its conclusion; however, please be sure that your funds will be returned as soon as our internal review is finalized.

Cordially,


Ana M. Faría Jové
Legal Counsel



250 Muñoz Rivera Ave | 14th Floor, Suite 1410 | Box #22 | San Juan, PR 00918
T. +1 787 274 1678/79 | F. +1 787 274 1670          www.bancredito.com

**From:** Ludovic Chechin-Laurans [mailto:lcl@capitalunionbank.com]
**Sent:** Wednesday, October 25, 2017 8:41 AM
**To:** Ana Faria <afaria@bancredito.com>
**Cc:** Nydia Rubero <nrubero@bancredito.com>; Frances M. Diaz <fdiaz@bancredito.com>; Gregorio D'Andrea <gdandrea@bancredito.com>; Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Mrs Faria,

Thanks for your message. We read the provisions of your agreement. It remains that we asked for closing about a month ago, and it is not market practice to hold funds from a client for such a long time, and certainly not for such amount. You

should be able to retain a nominal amount until closing, but not the entire balance, in order to show good faith, considering the situation.

Also, we believe that you should be in a position to provide us with a clear timeline for the account closing. We understand very well that your operation has been disrupted due to the hurricane, but your management and Directors have to confirm to us when the compliance review will be completed.

I am sure that you understand that without any certainty on any date, the inability to recover our funds would have to be disclosed to our regulator in the context of our financial reporting, as we may have to record a provision for a potential loss of US$ 2.4 million, which would be immediately deducted from our eligible regulatory capital. Such reporting, due at the end of October, would trigger an immediate reaction from our regulator, the Central Bank of the Bahamas, which would most likely immediately contact yours, especially since you are providing correspondent banking services not only to us but also to several other licensees in the Commonwealth of the Bahamas.

Looking forward to receiving your feedback,

Best regards,


Ludovic Chechin-Laurans  |  CEO



**CAPITAL UNION BANK**

PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com


---

**From:** Ana Faria [mailto:afaria@bancredito.com]
**Sent:** Tuesday, October 24, 2017 5:53 PM
**To:** Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Cc:** Nydia Rubero <nrubero@bancredito.com>; Frances M. Diaz <fdiaz@bancredito.com>; Gregorio D'Andrea <gdandrea@bancredito.com>; Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Mr. Chechin-Laurans,

I hope this email finds you well. I am contacting you in response to your e-mail received today, Tuesday, October 24, 2017 at 12:25 PM.  We hereby reiterate that Bancrédito International Bank, Corporation ("BIBC") will return your funds, in compliance with the provisions of the Correspondent Banking Agreement (the "Agreement"). As established in Section 25 of the Agreement executed between Capital Union Bank and BIBC, "... in order to terminate the Account, BIBC shall perform such due diligence and other procedures [i.e. compliance review] that it understands in its sole discretion are called for before terminating the Account; and may impose an account closing fee in such amount as may be established by BIBC from time to time."

Therefore, regarding the execution of the transfer request, we hereby confirm that, once the due diligence and account closing procedure is completed, BIBC will transfer the balance of $2,390,000.00 ($2,400,000.00 - $10,000.00) to your account.

Cordially,

Ana M. Faría Jové
Legal Counsel



250 Muñoz Rivera Ave | 14th Floor, Suite 1410 | Box #22 | San Juan, PR 00918
T. +1 787 274 1678/79 | F. +1 787 274 1670          www.bancredito.com

---

**From:** Ludovic Chechin-Laurans [mailto:lcl@capitalunionbank.com]
**Sent:** Tuesday, October 24, 2017 12:25 PM
**To:** Nydia Rubero <nrubero@bancredito.com>
**Cc:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann
<Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication
**Importance:** High

Dear Nydia,

I just tried to call your CEO, without success. I am not sure how your legal department is reading your Correspondent Bank Agreement, please see extract below:

| | |
|---|---|
| Penalty fees for early withdraw of principal before the maturity date of Certificate or Time Deposit | • Maturity of 30 days - no interest is paid<br>• Maturity of 31 - 90 days - penalty of 30 days of interest<br>• Maturity of 91 - 365 days - penalty of 90 days of interest<br>• Maturity of 366 Days or more – penalty of 180 days of interest |

The penalty referred to in your agreement is basically the cancellation of interest to be paid out of a certificate of deposit. I already underlined to you that we had never invested in any deposit, and that our cash on your books was never remunerated, ie you kept the overnight interests. In substance, we already paid the penalty foreseen in the agreement...

Moreover, in the context of early termination, your agreement does not mention that any minimum shall be "blocked "during the closing process, neither does it mention any closing fees for Compliance review. Please refer to Paragraph 1.B and Schedule B.

Therefore, we can only consider from the letter attached that you are not willing to send us back our funds. Should Bancredito want to avoid the hassle and the costs involved in dealing with a legal action, both in PR and in Florida, I would suggest you confirm in writing today the following:

- Your execute our transfer request, ie send us our funds, the total balance of US$ 2'400'000, minus $10'000 "closing retainer"
- You process your Compliance Review and finally close the account when your Compliance process is completed,
- You will charge $10'000 as October Monthly Fee ($7'500) & closing fee for $2'500.

Looking forward to receiving your urgent feedback,

Best regards,

Ludovic


Ludovic Chechin-Laurans | CEO



CAPITAL UNION BANK

PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com

---

**From:** Nydia Rubero [mailto:nrubero@bancredito.com]
**Sent:** Tuesday, October 24, 2017 11:47 AM
**To:** Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Cc:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** I M P O R T A N T communication

Dear Mr. Chechin-Laurans:

Please find attached letter from Bancrédito International Bank.

Cordially,

Nydia Rubero Alvarez
ISA Manager



250 Muñoz Rivera Ave | 14th Floor, Suite 1410 | Box #22 | San Juan, PR 00918
T. +1 787 274 1678/79 | F. +1 787 274 1670        www.bancredito.com

**Please consider the environment before printing this email**

CONFIDENTIALITY NOTICE: This electronic mail message contains information belonging to Bancrédito International Bank, Corp. that (a) is or may be CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the addressee(s) named herein. If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please delete it and notify us immediately.

**From:** Ludovic Chechin-Laurans [mailto:lcl@capitalunionbank.com]
**Sent:** Monday, October 23, 2017 4:43 PM
**To:** Nydia Rubero <nrubero@bancredito.com>
**Cc:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Nydia,

I understand from Luciana, who talked to you earlier today, that you had not received any information from your Directors following your last board meeting.

We would appreciate to receive, at minimum, some feedback from your management to explain the reason for such situation and confirm the closing of our account with your institution.

Looking forward to receiving your feedback,

Ludovic Chechin-Laurans | CEO



PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com

**From:** Ludovic Chechin-Laurans
**Sent:** Thursday, October 19, 2017 3:20 PM
**To:** 'Nydia Rubero' <nrubero@bancredito.com>
**Cc:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Rolf Schuermann <Rolf.Schuermann@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Nydia,

I took note of the discussion you just had with Luciana this afternoon. That being said, we need to have a final confirmation of the date for the final transfer and closing.

I understand that there is an internal process you have comply with, not mentioning the extraordinary circumstances linked to the hurricane, but we started the closing about a month ago. Bancredito should now be reasonably in position to return our funds.

Our board has already explored our legal recourses, and we are ready to initiate legal actions in PR and Florida.

I believe we can avoid this if we get a formal confirmation from you today. The absence of simple date confirmation from Bancredito is not acceptable anymore. We've scheduled an extraordinary board meeting tonight, and our directors are currently flying to Nassau.

I would really appreciate to receive you feed back before.

Looking forward to receiving your feedback,

Ludovic Chechin-Laurans | CEO



PLEASE NOTE THAT WE HAVE RELOCATED

Lyford Financial Center #2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1
www.capitalunionbank.com

---

**From:** Luciana Silvera
**Sent:** Thursday, October 19, 2017 8:51 AM
**To:** 'Nydia Rubero' <nrubero@bancredito.com>; Omar Rodriguez <orodriguez@bancredito.com>; Ivonne Reyes
<ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ludovic Chechin-Laurans
<lcl@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Nydia
Could we please get an update on the situation of our request?  We would like to understand what exactly is holding our
instruction

Many thanks
Luciana

**From:** Nydia Rubero [mailto:nrubero@bancredito.com]
**Sent:** Monday, October 16, 2017 4:31 PM
**To:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>; Omar Rodriguez <orodriguez@bancredito.com>; Ivonne
Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ludovic Chechin-Laurans
<lcl@capitalunionbank.com>
**Subject:** I M P O R T A N T communication

Estimada Luciana:

Verifico.

Saludos,

Nydia Rubero Alvarez
ISA Manager



250 Muñoz Rivera Ave | 14th Floor, Suite 1410 | Box #22 | San Juan, PR 00918
T. +1 787 274 1678/79 | F. +1 787 274 1670          www.bancredito.com

**Please consider the environment before printing this email**

CONFIDENTIALITY NOTICE: This electronic mail message contains information belonging to Bancrédito International Bank, Corp. that (a) is or may be CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the addressee(s) named herein. If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please delete it and notify us immediately.

**From:** Luciana Silvera [mailto:Luciana.Silvera@capitalunionbank.com]
**Sent:** Monday, October 16, 2017 1:42 PM
**To:** Nydia Rubero <nrubero@bancredito.com>; Omar Rodriguez <orodriguez@bancredito.com>; Ivonne Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Subject:** RE: I M P O R T A N T communication

Dear Nydia
We are following up on our request attached.
Kind regards

Luciana

**From:** Luciana Silvera
**Sent:** Friday, October 6, 2017 2:58 PM
**To:** 'Nydia Rubero' <nrubero@bancredito.com>; Omar Rodriguez <orodriguez@bancredito.com>; Ivonne Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Subject:** I M P O R T A N T communication
**Importance:** High

Dear all

Please find attached a letter with important information regarding your account maintained with Capital Union Bank Ltd.

Kind regards,


Luciana Silvera

# CUB
**CAPITAL UNION BANK**

Lyford Financial Centre # 2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone   + 1 242 362 6880/1 ext.106
Mobile       + 1 242 376-2390
www.capitalunionbank.com

PLEASE NOTE THAT WE HAVE RELOCATED

**CONFIDENTIALITY NOTE:** The information transmitted in this email, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and destroy any copies of the information.

**Capital Union Bank** reserves the right to monitor all e-mail communications through its network. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of **CUB**. Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation

---

**From:** Luciana Silvera
**Sent:** Thursday, October 5, 2017 8:43 AM
**To:** 'Nydia Rubero' <nrubero@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; 'Ivonne Reyes' <ireyes@bancredito.com>; 'Mirna Quiñones' <mquinones@bancredito.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>; 'Omar Rodriguez' <orodriguez@bancredito.com>
**Subject:** RE: wire transfer

Dear all,

Could we please have an update and estimated date for the execution of the USD 2.4M?
Kind regards

Luciana Silvera

 **CUB**
**CAPITAL UNION BANK**

Lyford Financial Centre # 2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1 ext.106
Mobile      + 1 242 376-2390
www.capitalunionbank.com

PLEASE NOTE THAT WE HAVE RELOCATED

**CONFIDENTIALITY NOTE:** The information transmitted in this email, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and destroy any copies of the information.

**Capital Union Bank** reserves the right to monitor all e-mail communications through its network. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of **CUB**. Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation

**From:** Luciana Silvera
**Sent:** Tuesday, October 3, 2017 11:42 AM
**To:** 'Nydia Rubero' <nrubero@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ivonne Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>; Omar Rodriguez <orodriguez@bancredito.com>
**Subject:** RE: wire transfer

That is correct Nydia, the USD 2.4 that we just sent remains valid. (see email attached)

---

**From:** Nydia Rubero [mailto:nrubero@bancredito.com]
**Sent:** Tuesday, October 3, 2017 10:49 AM
**To:** Luciana Silvera <Luciana.Silvera@capitalunionbank.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ivonne Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>; Omar Rodriguez <orodriguez@bancredito.com>
**Subject:** RE: wire transfer

Estimada señora Silvera:

Favor de confirmar la cancelación de la siguientes transferencias:

- $5,685,186.02
- $4,620,209.00

Saludos,

Nydia Rubero Alvarez
ISA Manager



250 Muñoz Rivera Ave | 14th Floor, Suite 1410 | Box #22 | San Juan, PR 00918
T. +1 787 274 1678/79 | F. +1 787 274 1670      www.bancredito.com

**Please consider the environment before printing this email**

CONFIDENTIALITY NOTICE: This electronic mail message contains information belonging to Bancrédito International Bank, Corp. that (a) is or may be CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the addressee(s) named herein. If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please delete it and notify us immediately.

---

**From:** Luciana Silvera [mailto:Luciana.Silvera@capitalunionbank.com]
**Sent:** Tuesday, October 03, 2017 9:03 AM
**To:** Nydia Rubero <nrubero@bancredito.com>; Omar Rodriguez <orodriguez@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; Ivonne Reyes <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Subject:** wire transfer

Dear Nydia and team,

We have seen than the first 2.3M transfer has been executed on your side, many thanks.

Following with the procedure for the final closing of our account kindly provide an update and estimate date for the payment of the second USD 2.3m wire transfer that I have attached along with our closing request for your ease of access.

Kind regards,


Luciana Silvera

 **CAPITAL UNION BANK**

Lyford Financial Centre # 2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas
Telephone  + 1 242 362 6880/1 ext.106
Mobile       + 1 242 376-2390
www.capitalunionbank.com

PLEASE NOTE THAT WE HAVE RELOCATED

**CONFIDENTIALITY NOTE:** The information transmitted in this email, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited.  If you received this message in error, please contact the sender and destroy any copies of the information.

**Capital Union Bank** reserves the right to monitor all e-mail communications through its network. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of **CUB**.  Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation


**From:** Luciana Silvera
**Sent:** Friday, September 29, 2017 8:17 AM
**To:** Nydia Rubero <nrubero@bancredito.com>; Omar Rodriguez <orodriguez@bancredito.com>
**Cc:** 'Juan Andres Aguiar' <jaguiar@bancreditowealthandtrust.com>; 'Ivonne Reyes' <ireyes@bancredito.com>; Mirna Quiñones <mquinones@bancredito.com>; Ludovic Chechin-Laurans <lcl@capitalunionbank.com>
**Subject:** FW: Loan Repay

Dear Nydia and team,

Please find attached amended wire transfer instructions.

Kind regards


Luciana Silvera

 **CAPITAL UNION BANK**

Lyford Financial Centre # 2, Lyford Cay | PO Box AP 59223 | Nassau, Bahamas

Telephone  + 1 242 362 6880/1 ext.106
Mobile      + 1 242 376-2390
www.capitalunionbank.com

PLEASE NOTE THAT WE HAVE RELOCATED

**CONFIDENTIALITY NOTE:** The information transmitted in this email, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited.  If you received this message in error, please contact the sender and destroy any copies of the information.

**Capital Union Bank** reserves the right to monitor all e-mail communications through its network. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state the views of **CUB**.  Unless otherwise stated, any pricing information in this message is indicative only, is subject to change and does not constitute an offer to deal at any price quoted. Any reference to the terms of executed transactions should be treated as preliminary only and subject to our formal written confirmation